## Vincent Bendix, Appellant, v. Staver Carriage Company, Appellee.

### Gen. No. 20,304.   (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed June 17, 1915.

### Statement of the Case.

Action brought by Vincent Bendix against the Staver Carriage Company, a corporation, to recover for the breach of a contract to furnish automobiles for sale. From a judgment of the Municipal Court upon a directed verdict in favor of the defendant, the plaintiff appeals.

The contract in question is found in the report of a former appeal. See 174 Ill. App. 589. The evidence of the plaintiff tended to prove that immediately after the contract was signed, the plaintiff gave the defendant an order for a sample car for exhibition and dem-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

onstration purposes, paid a cash deposit of $50 at that time, and paid the remainder of the net purchase price, $1,000, in cash upon delivery of the same; that this car was not delivered until June 12, 1909, at a time when the season for the sale of 1909 cars was well advanced; that in the meantime, the plaintiff rented and opened a salesroom and signed a two years' lease for the same, at a rental of $1,000 for the first year, and $1,100 for the second; that he hired salesmen, signed a year's contract with a daily newspaper for advertising space, advertised therein and in other papers, and prepared and sent out circular letters to prospective customers, etc.; that on May 15, 1909, he ordered four more cars from the defendant and paid a deposit of $50 on each; that the first of these four cars was delivered about July 23rd the second about August 18th, the third sometime in September, and the last in the latter part of October; that at the time this order was given, the plaintiff had no order from any customer for any of the cars; that customers were found, however, by the plaintiff for all of them about as fast as the same were delivered; that during the summer of 1909, the president of the defendant company expressed dissatisfaction with some of the terms of the contract, especially the rate of discount allowed to the plaintiff, and requested the plaintiff to sign a new contract, such as defendant was "making with other dealers," which plaintiff declined to do; that in August, defendant raised the list price of its cars $250; that soon after, Mr. Staver, the president of the defendant company, told the plaintiff it intended to "revise their lines and bring out new models" for the season of 1910, but when the plaintiff made inquiries about these changes, Mr. Staver declined to give him any information regarding the same unless he would sign a new contract; that finally, in November, 1909, the plaintiff made a specific request of the defendant for catalogues for the 1910 models, as he wanted to make plans for that year, but

Mr. Staver replied: "When you fix up a contract you will get all the information that is necessary. We will build four and six cylinder cars. That is all the information you will get until you sign a new contract. You cannot continue this contract. It is unsatisfactory, and you will either sign a new contract or you will not get these cars." The evidence further showed that the 1909 season for selling automobiles was then practically over; that defendant had only two cars left in its factory, and those were unfinished; that defendant had discontinued making cars like the sample car then in use by the plaintiff; that on December 31, 1909, the plaintiff and his salesman went to the office of defendant for the purpose of making a deposit on five more cars, as required by the contract; that Mr. Staver was in his office at the time, but refused to see them, and that thereupon, the plaintiff tendered the sum of $250 in currency to one of defendant's officers there present, as a deposit upon the purchase of five cars, and with the money tendered a written order for five cars, without giving any specifications, but stating that he was ready to do everything that was necessary to be done to comply with his contract; that this offer or tender was refused, the officer saying that he did not know anything about the plaintiff's contract; that a few days later, the defendant notified the plaintiff in writing that "on account of your (his) failure to comply with the contract," the defendant considered "the same hereby terminated." It was further shown that thereafter, and during the term specified in the contract, defendant sold twenty-six cars within the territory named in the plaintiff's contract, for $40,828.50.

BROTHERS & MILLS, for appellant.

BULKLEY, GRAY & MORE, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

Bendix v. Staver Carriage Co., 194 Ill. App. 310.

## Abstract of the Decision.

1. SALES, § 373*—*sufficiency of evidence of breach of contract to furnish automobiles for resale.* The evidence in an action for the breach of a contract to furnish automobiles for resale, *held* prima facie sufficient to permit the plaintiff to recover.

2. SALES, § 374*—*when verdict improperly directed for defendant in action breach of contract.* A verdict *held* improperly directed for the defendant in an action for the breach of a contract to supply automobiles for resale.

3. SALES, § 62*—*when contract confers right to purchase.* A contract to supply the plaintiff with automobiles for resale, *held* to give him the right to purchase from the defendant and not merely the right to sell.

4. SALES, § 62*—*when contract confers right to purchase.* A contract conferring the exclusive right on the plaintiff to sell the defendant's automobiles in a city, *held* to entitle the plaintiff to purchase as many cars as he cared to buy, notwithstanding he did not have customers waiting for them.

5. SALES, § 160*—*when tender under contract of purchase must be kept good.* A tender of money under a contract for the purchase of automobiles giving an exclusive right of resale in a city, *held* an offer to perform a condition of the contract, and that the tender need not be kept good by bringing the money into court.

6. SALES, § 65*—*when quantity sufficiently designated in order.* An order for automobiles under a contract for their exclusive sale in a city, *held* to sufficiently designate the cars desired, where the defendant did not object to the order for that reason, and there was an uncertainty at the time the order was given as to the kind of automobiles the defendant intended putting on the market, and the purchaser offered to do whatever the defendant might require to comply with the contract.

7. SALES, § 143*—*when purchaser must be ready to perform on rescission by seller.* Where the plaintiff declined to acquiesce in the cancellation by the defendant of a contract for an exclusive right to sell automobiles in a city, and notified the latter to that effect, all that the plaintiff was required to do was to hold himself in readiness to perform if the defendant changed his position.

8. SALES, § 44*—*when stipulation against use of vendor's name in effecting resale of chattels broken.* The fact that the plaintiff sent out circulars on the defendant's letter heads, *held* not to violate a condition of a contract for the exclusive sale of automobiles in a city, prohibiting the use of the defendant's name on printed matter, where it was done by direction of the defendant's superintendent, and was discontinued on objection being made by the defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

9. DAMAGES, § 66*—*what recoverable for sales by vendor in territory allotted to purchaser of automobiles.* Where a manufacturer sold automobiles in a territory it had assigned by a sales contract to the plaintiff, the latter may recover under a condition of his contract providing that the manufacturer should reimburse the plaintiff "to the extent of commissions and discounts" prescribed in the contract for all cars sold by the defendant in such territory.